### PUUHEANA (w.) *vs.* LIO (k.) *et al..*

APPEAL FROM DECISION OF THE CHANCELLOR.

OCTOBER TERM, 1884.

JUDD, C. J.; McCULLY and AUSTIN, JJ.

A bill by a grantor to set aside deed on the ground of fraudulent representations, dismissed.

The Court will be exceedingly cautious about setting aside conveyances upon the ground of an ignorant misunderstanding.

Decision of the Chancellor affirmed.

OPINION OF THE FULL COURT, BY McCULLY, J.

THE complainant brings her bill in equity to set aside a convey-

ance executed by her in 1879 to Makaluhi and her husband Lio, alleging that she intended the conveyance to be to Makaluhi and Kapule. Makaluhi has since deceased and the estate has fallen to Lio by right of survivorship.

The sole question in the case is one of fact. It is the testimony on both parts that Puuheana, with Lio and some others, on a day in September, 1879, went to the residence of one S. W. Mahelona, a Hawaiian member of the bar, for the purpose of having a conveyance drawn and executed.

The testimony of the complainant and of two witnesses on her behalf is that Puuheana directed Mahelona to make the deed in favor of Makaluhi and Kapule ; that the consideration was to be $1 and a provision for the support and maintenance of the grantor for life ; and that when the deed was written Mahelona read it as conforming to these instructions, and the complainant, who cannot read, executed it. The deed in fact was to Lio and Makaluhi, for a consideration of $120 and without a covenant for maintenance.

We do not think it necessary to present an abstract report of the testimony, in view of what is set forth in the published opinion of the Chief Justice. We would point out one circumstance which is significant, upon which no comment has been made. All the witnesses for the plaintiff testify that it was after Mahelona had made a beginning of writing the instrument, Lio whispered or spoke in a low voice to him. It is strongly urged in argument for the plaintiff, that by that whispering Mahelona was induced to make the deed in favor of Lio, and not as instructed by Puuheana. By inspection of the instrument, we see that the name of Lio as grantee comes in the third line. It is added to all the improbabilities of this case that although he had begun and proceeded with the writing, he was so soon arrested and the instrument changed as to the grantee, and that upon the brief whispering the whole tenor of it changed as to consideration and covenant of support. Mahelona and Lio testify that the low-voiced words between them were only the statement of Lio that he had not brought money enough to pay for the land and the expenses of drawing and acknowledging the deed. It is in the highest degree unlikely that the attorney, to whom all parties had addressed

themselves, could so easily and in so brief a time have been induced to enter a fraudulent conspiracy. No evidence is given that drawing the deed in the form in which it stands was of any advantage to him.

We have given full consideration to all the testimony of record and we are strongly impressed with its failure to support the plaintiff's claim. It is clearly proved, in our view, that there was no fraud in the drawing and execution of the deed.

We discredit the testimony of the three witnesses who testify that different instructions were given to Mahelona and that he read to them a different instrument from that which was written. Puuheana, by her conduct and by many declarations to different parties, proves that she knew and intended the conveyance to be made to Lio for one grantee.

It is not a rare case for an elderly Hawaiian, ignorant of reading and writing, to allege that he has been imposed upon by the fraudulent reading of an instrument which he thereupon executes. There have been cases where such allegation is sustained. But the Court will be exceedingly cautious about setting aside conveyances upon the ground of an ignorant misunderstanding. The proofs must be unimpeachable ; the circumstances of the case must show probable fraud, imposition and unreasonable character ; the parties claiming to have suffered by their ignorance must not have slept upon their rights after discovering the alleged fraud.

To hold otherwise would offer a privilege and a premium to ignorance and greatly disturb all titles from aged Hawaiian grantors.

The case before us lacks all the features of a case entitled to relief.

We therefore affirm the judgment of the Court in Chambers.

*M. Thompson* and *John Russell*, for plaintiff.

*A. S. Hartwell*, for defendants.

Honolulu, November 29, 1884.

### DECISION OF THE CHANCELLOR, APPEALED FROM.

This is a bill in equity to annul, on the ground of fraud, a deed of conveyance dated the 4th of September, 1879, of a piece of land at Waikiki, Oahu, held under R. P. No. 1512.

The position is taken on the part of the plaintiff that she in-

tended to make a deed of her land to Makaluhi and Kapule, but her attorney, S. W. Mahelona, who drew the deed, fraudulently inserted the name of Lio, the husband of Makaluhi, in place of that of Kapule, so that the deed was made to Makaluhi and Lio, and this the plaintiff was first made aware of when the deed was read to her after certain proceedings in Probate Court on February 20, 1883.

The witnesses on behalf of plaintiff were Puuheana herself, and Beke and Mikala her nieces. These three persons swear that they with Lio and Makaluhi left Waikiki on the 6th of September, 1879, and went to Mahelona's house and requested him to make the deed to Kapule and Makaluhi; that he assented and commenced to write when Lio went close to Mahelona and whispered something to him. When the deed was completed Mahelona read it aloud and read the names of Kapule and Makaluhi as the grantees. They say the consideration was one dollar ($1) and that the grantees were to support Puuheana during her life. They also say that the party went to the Registrar's office and there Mr. Brown wrote Puuheana's name at her request and took her ac-acknowledgment.

Kapule, who was a nephew of Puuheana, is dead. Makaluhi, who was a niece of Puuheana, is also dead.

Lio and Mahelona both testify that he with Puuheana and Makaluhi went to Mahelona's on the 4th of September, and that at Puuheana's request he made the deed to Makaluhi and Lio; that he paid the purchase money, $120 in cash, to Puuheana; that she signed the deed at Mahelona's house, he writing her name. They both say that neither Beke nor Mikala were present. The name of Puuheana in execution of the deed is evidently in the handwriting of Mr. Mahelona and not of Mr. Brown. The deed bears date the 4th of September, and not the 6th. The driver Mokulehua testifies that he brought only Puuheana, Makaluhi and Lio to Mahelona's and did not see Beke or Mikala there; but a lad, Keola, says that he drove Beke and Mikala to town and they got out near the corner of Nuuanu and Beretania streets and walked thence toward Mahelona's house, where Kioula and Kamakauwila say they saw them and that they proceeded toward Mahelona's house on foot.

It is in evidence from the testimony of six other witnesses that shortly subsequent to this date Puuheana stated to them that she had sold the land to Makaluhi and Lio.

Mr. W. R. Castle, an attorney of this Court, testifies that he had bought a kuleana in a corner of the land in dispute, and wishing to extend his lot, asked of whom he should inquire about it and he was directed to Puuheana. He repeated his question to her that he desired to buy the land, and she said: "I have no interest in this land; it is sold to Makaluhi and Lio."

There was also evidence to show that Lio, after the date of the deed, collected rents of several persons who had houses upon the land and that Kapule made no claim to the land, though the complainant says Kapule collected some rents which he shared with her.

It seems to me that this case is without foundation, and it arises in this way: On the death of Makaluhi, intestate, her heirs at law supposed they inherited an interest in her property. Proceedings were then instituted in probate for administration on her estate. Puuheana swore that her name was Makaluhi and that Makaluhi's name was Puuheana. It was afterward discovered that these two women bore these names interchangeably. But the facts are undisputed that the plaintiff Puuheana is the widow of Nalaweha, the patentee. Luki, deceased, was the wife of Lio. The Probate Court decided that by survivorship the husband, Lio, was entitled to the whole estate in the land, the deed being to him and his wife jointly, and declined to grant letters of administration.

When Mr. Castle read the deed to them, Puuheana, Wailehua (Makaluhi's father), Keiki and others, no dissatisfaction was expressed. I think this suit was conceived by the relatives of Puuheana on her behalf, in their disappointment that Lio became by the operation of law the owner of the whole estate.

The numerous declarations made by Puuheana (and which are not denied) that she had given the land to Makaluhi and Lio, are weighty. These admissions against her present position go very far toward destroying her evidence; but she is old and feeble and is doubtless under the influence of others who are promoting this suit.

The remarkable agreement of the witnesses of the plaintiff as

to the date of the deed being September 6th, which is the wrong date, shows something of concert in arranging their testimony, for which counsel are not at all responsible.

Mr. Mahelona received not over $5 for his services, and it is inconceivable that he should have committed a gross fraud upon his confiding fellow-countrymen and backed it up with perjury, for so small a sum of money.

I cannot resist the impression made upon me by the evidence that there was no fraud practiced upon Puuheana, and find the truth to be that the deed of the 4th of September, 1879, was intended to be made, as it was in fact made, to Makaluhi and Lio. For this reason the bill must be dismissed.

The amended bill alleges substantially that since the filing of the original bill the plaintiff discovered that the said Lio had had executed and delivered to Ida B. Castle a deed of conveyance of the said land, and that said Ida had afterward, to wit, on the —— day of ——, 1883, made a deed of conveyance of a portion of said land to Robert Lewers, and thereupon the plaintiff obtained leave to make Ida and W. R. Castle and R. Lewers parties defendant. That said deed to Castle and Lewers are clouds upon plaintiff's title. The plaintiff charges that these defendants are not *bona fide* purchasers and that Mrs. Castle obtained the deed from Lio without adequate consideration; that these defendants had notice of the fraudulent character of the deed to Lio before the purchase from Lio; that the defendants had notice of such facts and circumstances as were reasonably calculated to put them upon inquiry as to the fraudulent character of the deed to Lio, and that the defendants had reason to suspect and had heard that plaintiff denied the validity of the deed and proposed to contest the same.

The answer of Mr. and Mrs. Castle to such parts of the bill as they are advised is material for them to answer is, "that prior to the said deeds to said Ida B. Castle and R. Lewers, respectively, neither one of these defendants had notice of any fraudulent character of said deed to said Lio, or of any facts or circumstances reasonably calculated to put them or any one of them upon inquiry concerning the same, and that neither one of these defendants

26

prior to the taking of their respective deeds had heard or been informed that the plaintiff disputed or proposed to contest or litigate the validity of her said deed."

No evidence was offered on the part of the plaintiff to show that Mr. and Mrs. Castle or Mr. Lewers had notice of the fraudulent character of the deed to Lio.

The testimony on behalf of the defendants to show their want of notice, etc., was objected to by plaintiff's counsel on the ground that the answer does not contain the requisite averments to entitle them to the benefit of such evidence. And the counsel cited cases, notably *Boone vs. Chiles*, 10 Peters, 177,255, to sustain the position that to entitle a defendant to the benefit of the defense of a *bona fide* purchaser, he must allege that the grantor was seized in fee, and in possession, that the defendant paid the consideration in good faith and without actual or constructive notice of the fraud.

An extended examination of the case of *Boone vs. Chiles* will show that the "deed" referred to was a mere contract of purchase, and that there was no allegation in the answer referring to the deed; the defendants merely asserted a contract to purchase; and the Court well say that "a party is not allowed to state one case in the bill or answer and make out a different one by proof."

In the case at bar the charge of being purchasers *with notice* is distinctly made against defendants, which they deny, and I think under the pleadings this was sufficient.

But having decided that the deed from plaintiff to Makaluhi and Lio must stand, there is no occasion further to discuss the questions as to the status of the subsequent purchasers. I only need repeat that there is no evidence affecting them with notice, but a positive denial on the part of Mr. Castle that he had any reason to suspect that the deed in question was fraudulent.

The bill must be dismissed.